UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK CROUCH,

        Plaintiff,

v.

NRA LLC, BOC LLC, UPG, LLC,
MIDWESTERN ALLIANCE, LLC,
DAVID MICHAEL CARR,
RUSSELL M. CAMPISE SR., and
HERON EASTON SIMMONDS,

        Defendants.
_____/

COMPLAINT

## I.  Introduction

1.  This is an action for damages brought against debt collectors for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, Michigan Regulation of Collection Practices Act ("MRCPA"), M.C.L..§ 445.251 *et seq.,* and Michigan Occupational Code ("MOC") M.C.L. § 339.901 *et seq.*

2.  Defendants, along with other entities and individuals to be identified in discovery, are involved in an ongoing scheme whereby they have conspired to use false representations and threats to coerce the payment of money from consumers across the country who allegedly have failed to repay payday loans.  This scheme, similar to that operated by other entities located in and around Buffalo, New York, Atlanta, Georgia, Chicago, Illinois, Charlotte, North Carolina, and various cities in Florida, is based on the use of a script, sometimes known as "The

Shakedown" or "The Shake," that includes variations of the following:  The caller calls from a blocked number or uses a telephone number with the consumer's area code, pretends to be a local process server, states to the consumer that "charges" have been filed against the consumer for "breach of contract" or "defrauding a financial institution" and represents that the caller is attempting to locate and serve the consumer with a summons and complaint that has been filed in court against the consumer.  The caller suggests that the charges might not be pursued if the consumer calls a toll free number in the next several hours and arranges to pay money to the fake process server's "client" (which often has a name designed to sound like that of a law firm). Usually, the threatening messages are unlawfully with the consumer's relatives, employer and other third parties, in order to increase the likelihood of a response.  When the consumer responds to the call, the collector (often posing as an attorney or paralegal) accuses the consumer of misdeeds, makes false threats of pending litigation (and sometimes prosecution), and demands payment of the alleged debt.  Of course, no lawsuit has been filed.  Often times the caller misrepresents and grossly overstates the amount owed.  Often times the debt is time-barred. Often times, the consumer's personal, financial and account information will have been stolen and will have been sold and resold to multiple parties, such that the caller no longer owns or otherwise has any right to collect the account.  Often times, the loan has been repaid and there is no debt owed.  When sued for violating the FDCPA, most of the entities default, accumulate default judgments, and continue to operate under a progression of limited liability companies, with listed "business" addresses that are nothing more than rented private mail boxes.

3.     The use of these unlawful debt collection practices is epidemic.  See, for example, the Complaint for Permanent Injunction and Other Equitable Relief filed on February 9, 2015 in

the United States District Court, Western District of New York (Buffalo), Case No. 1:15-cv-112, by the Federal Trade Commission and the State of New York against 4 Star Resolution LLC and nine other defendant debt collection entities. See also, the Complaint for Permanent Injunction and Other Equitable Relief filed on February 24, 2014 in the United States District Court, Western District of New York (Buffalo), Case No. 1:14-cv-122, by the Federal Trade Commission against Federal Check Processing, Inc. and fourteen other debt collection entities defendants.  See also, the complaint filed by the United States of America against Williams Scott & Associates, LLC *et al.,* U.S. District Court, Southern District of New York, Case No. 1:14-mj-02546-UA, in which the government alleged that the defendants located in Norcross, Georgia have continuously engaged in a conspiracy to commit wire fraud and violated the FDCPA and other laws, through a payday loan collection scheme that is indistinguishable from the ongoing scheme being perpetrated by the defendants a alleged in this complaint.  The United States Department of Justice, the Federal Bureau of Investigation, the Federal Trade Commission, the Consumer Financial Protection Bureau, the attorneys general of virtually every state, and the Better Business Bureau all have issued press releases that warn consumers about this ongoing scam.

## II.    Jurisdiction

4.    This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C. § 1331.  This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28 U.S.C. § 1367.   Venue in this judicial district is proper because the pertinent events took place here.

### III.    Parties

5.    Plaintiff Mark Crouch is an adult, natural person residing in Kent County, Michigan.  Mr. Crouch is a "consumer" and "person" as the terms are defined and used in the FDCPA.  Mr. Crouch is a "consumer," "debtor" and "person" as the terms are defined and used in the MRCPA and MOC.

6.    Defendant NRA LLC ("NRA"), also doing business as Nationwide Recovery Associates, also doing business as NRA & Associates, also doing business as Pre-Trial Processing, is an active Florida limited liability company. NRA purportedly does business at 6440 NW 5th Way, Fort Lauderdale, Florida 33309-6112. In efforts to conceal its true identity and location, NRA receives mail at 401 East Las Olas Boulevard, "Suite 130-604," Fort Lauderdale, Florida 33301, but the address is merely a private mailbox (No. 604) rented by defendants from The UPS Store No. 4356. The registered agent for NRA is Corporate Creations Network Inc., 11380 Prosperity Farms Road, Suite 221E, Palm Beach, Florida 33410. In further efforts to conceal its true identity and location, NRA maintains an internet domain (www.nraassociates.com) which it registered anonymously on January 27, 2015 through an entity located in Panama. The Managing Members of NRA include defendants David Michael Carr and Omar Hussain. NRA is licensed (No. CCA9903198) by the State of Florida as a Consumer Collection Agency. NRA uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. NRA regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. NRA is a "debt collector" as the term is defined and used in the FDCPA. NRA is a "regulated person" as the term is defined and used in the MRCPA.  Alternatively, NRA is a "collection agency" and "licensee" as the terms are defined and used in MOC.

4

7.     NRA in efforts to conceal its true identity and location, on June 1, 2015, became the subscriber to an unlisted telephone number, 844-238-7940, which is provided to NRA by an entity named Onvoy, LLC, doing business as Vitelity, LLC, 10300 6th Avenue North, Plymouth, Minnesota 55441.  The fax number for NRA is 954-343-8717.

8.     During all times pertinent hereto, NRA directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Mr. Crouch that are described in this complaint.

9.     Defendant BOC LLC ("BOC") is an active New York limited liability company. BOC does business in Florida as BOC Group of NY, LLC. BOC purportedly does business at 6440 NW 5th Way, Fort Lauderdale, Florida 33309-6112, in space that it shares and commingles with defendants NRA. The registered agent for BOC is Corporate Creations Network Inc., 11380 Prosperity Farms Road, Suite 221E, Palm Beach, Florida 33410. The Managing Members of BOC include defendant David Michael Carr. BOC is licensed (No. CCA9903246) by the State of Florida as a Consumer Collection Agency. BOC uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. BOC regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. BOC is a "debt collector" as the term is defined and used in the FDCPA. BOC is a "regulated person" as the term is defined and used in the MRCPA.  Alternatively, BOC is a "collection agency" and "licensee" as the terms are defined and used in MOC.

10.     During all times pertinent hereto, BOC directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Mr. Crouch that are described in this complaint.

11.     Defendant UPG, LLC ("UPG") is an active New York limited liability company.

5

UPG also does business under various unregistered names, including United Portfolio Group, UPG Group LLC, UPC, United Capital Group and Ulysses, Playton & Grant. UPG purportedly does business at 255 Great Arrow Avenue, Suite 118, Buffalo, New York 14207. UPG receives mail at P.O. Box 93, Hamburg, New York 14075. The registered agent for UPG is Corporate Creations Network Inc., 11380 Prosperity Farms Road, Suite 221E, Palm Beach, Florida 33410. The Managing Members of UPG include defendant David Michael Carr. UPG is licensed (No. CCA9903025) by the State of Florida as a Consumer Collection Agency. UPG uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. UPG regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. UPG is a "debt collector" as the term is defined and used in the FDCPA. UPG is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, UPG is a "collection agency" and "licensee" as the terms are defined and used in MOC.

12.     During all times pertinent hereto, UPG directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Mr. Crouch that are described in this complaint.

13.     Defendant Midwestern Alliance, LLC ("Midwestern"), formerly known as Midwestern Consulting LLC, is an active New York limited liability company.  Midwestern purportedly does business at 255 Great Arrow Avenue, Suite 118, Buffalo, New York 14207. The registered agent for Midwestern is Corporate Creations Network Inc., 15 North Mill Street, Nyack, New York 10960.  The internet website for an entity named ACA International (www.acainternational.org) states that the "Ethics Contact" for Midwestern is David Carr, 305 West Broadway, Suite 114, New York, New York 10013-5306.  33410. The Managing Members

of Midwestern include defendant David Michael Carr. Midwestern uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.  Midwestern regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.  Midwestern is a "debt collector" as the term is defined and used in the FDCPA.  Midwestern is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Midwestern is a "collection agency" and "licensee" as the terms are defined and used in MOC.

14.     During all times pertinent hereto, Midwestern directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Mr. Crouch that are described in this complaint.

15.     UPG and Midwestern regularly purchase delinquent consumer debt. According to a financing statement filed on April 6, 2015 by UPG and Midwestern with the New York Secretary of State, UCC Division, both debtors' accounts and proceeds are subject to a security interest in favor of CMAX Finance Partners III, LLC, 1555 Palm Beach Lakes Boulevard, Suite 200, West Palm Beach, Florida 33401-2339. According to another financing statement filed on March 31, 2015 by UPG with the New York Secretary of State, UCC Division, "all assets" of UPG are subject to a security interest in favor of ACH Capital LLC, agent for CAP CALL LLC, 11 Broadway, Suite 814, New York, New York 10004-1366.

16.     Defendant David Michael Carr, age 41, is a natural person, purportedly residing at 74 Forest Hill Drive, Buffalo, New York 14221-3217. Mr. Carr is registered (No. 4079562) by the State of New York to practice law.  According to information provided by Mr. Carr to the New York State Unified Court System, Mr. Carr operates his law practice, The Carr Law Firm, PLLC, at 305 West Broadway, Suite 114, New York, New York 10013-5306.  However, that

address is nothing more than a private mailbox rented by Mr. Carr at The UPS Store, store #4248.  Mr. Carr also provided the New York State Unified Court System with a telephone number of 917-515-7500 and an email address of dave@mdwc.net.  Mr. Carr is an owner, managing member and manager of defendants NRA, BOC, UPG and Midwestern.  Mr. Carr uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.  Mr. Carr regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.  Mr. Carr is a "debt collector" as the term is defined and used in the FDCPA.  Mr. Carr is a "regulated person" as the term is defined and used in the MRCPA.  Alternatively, Mr. Carr is a "collection agency" and  "licensee" as the terms are defined and used in the MOC.

17.     During all times pertinent hereto, Mr. Carr (a) created the collection policies and procedures used by NRA, BOC, UPG and Midwestern, and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of NRA, BOC, UPG and Midwestern, (c) oversaw the application of the collection policies and procedures used by NRA, BOC, UPG and Midwestern, and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by NRA, BOC, UPG and Midwestern, and their employees and agents to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Mr. Crouch as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by NRA, BOC, UPG and Midwestern, and their employees and agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by NRA, BOC,

8

UPG and Midwestern, and their employees and agents in attempts to collect an alleged debt from Mr. Crouch as alleged in this complaint.

18. During all times pertinent hereto, Mr. Carr directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Mr. Crouch that are described in this complaint.

19. Mr. Carr maintains a page on the internet website www.linkedin.com, wherein Mr. Carr states that he is the Managing Partner of Midwestern, a debt management company, where the primary purpose is to purchase, sell and liquidate portfolios of debt, and wherein Mr. Carr states that his role is to "[m]anage the purchase, sale and liquidation of distressed debt portfolios which includes operating multiple call centers . . . ."

20. Mr. Carr is the member manager of non-party Trans America Consumer Solutions, LLC, a Nevada limited liability company. It will need to be determined in discovery whether or not this entity was involved in the efforts to collect the alleged debt from Mr. Crouch.

21. Mr. Carr is the member manager of non-party 10D Holdings, Inc., a Florida corporation. It will need to be determined in discovery whether or not this entity was involved in the efforts to collect the alleged debt from Mr. Crouch.

22. Defendant Russell M. Campise Sr., age 47, is a natural person, purportedly residing at 124 Southridge Drive, Buffalo, New York 14224-4443. Mr. Campise is a manager, employee and agent of defendants NRA, BOC, UPG and Midwestern. Mr. Campise previously worked as a debt collector for GE Capital and Mercantile Adjustment Bureau. Mr. Campise uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Campise regularly collects or attempts to collect, directly or indirectly, debts owed

or due or asserted to be owed or due another. Mr. Campise is a "debt collector" as the term is defined and used in the FDCPA. Mr. Campise is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr. Campise is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

23.     During all times pertinent hereto, Mr. Campise (a) created the collection policies and procedures used by NRA, BOC, UPG and Midwestern, and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of NRA, BOC, UPG and Midwestern, (c) oversaw the application of the collection policies and procedures used by NRA, BOC, UPG and Midwestern, and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by NRA, BOC, UPG and Midwestern, and their employees and agents to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Mr. Crouch as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by NRA, BOC, UPG and Midwestern, and their employees and agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by NRA, BOC, UPG and Midwestern, and their employees and agents in attempts to collect an alleged debt from Mr. Crouch as alleged in this complaint.

24.     During all times pertinent hereto, Mr. Campise directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Mr. Crouch that are described in this complaint.

25.     Defendant Heron Easton Simmonds, also known as Heron Simmonds-Price, age

45, is a natural person, purportedly residing at 57 Trinity Place, Apartment 2, Buffalo, New York

14201-2163. Mr. Simmonds is a manager, employee and agent of defendants NRA, BOC, UPG

and Midwestern. Mr. Simmonds uses interstate commerce and the mails in a business the

principal purpose of which is the collection of debts. Mr. Simmonds regularly collects or

attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due

another. Mr. Simmonds is a "debt collector" as the term is defined and used in the FDCPA. Mr.

Simmonds is a "regulated person" as the term is defined and used in the MRCPA. Alternatively,

Mr. Simmonds is a "collection agency" and "licensee" as the terms are defined and used in the

MOC.

26.     During all times pertinent hereto, Mr. Simmonds (a) created the collection

policies and procedures used by NRA, BOC, UPG and Midwestern, and their employees and

agents, in connection with their common efforts to collect consumer debts, (b) managed or

otherwise controlled the daily collection operations of NRA, BOC, UPG and Midwestern, (c)

oversaw the application of the collection policies and procedures used by NRA, BOC, UPG and

Midwestern, and their employees and agents, (d) drafted, created, approved and ratified the

tactics and scripts used by NRA, BOC, UPG and Midwestern, and their employees and agents to

collect debts from consumers, including the tactics and scripts that were used to attempt to

collect an alleged debt from Mr. Crouch as alleged in this complaint, (e) ratified the unlawful

debt collection practices and procedures used by NRA, BOC, UPG and Midwestern, and their

employees and agents in connection with their common efforts to collect consumer debts, and (f)

had knowledge of, approved, participated in, and ratified the unlawful debt collection practices

used by NRA, BOC, UPG and Midwestern, and their employees and agents in attempts to collect

an alleged debt from Mr. Crouch as alleged in this complaint.

27. During all times pertinent hereto, Mr. Simmonds directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Mr. Crouch that are described in this complaint.

28. Mr. Simmonds was born in Kingston, Jamaica and purportedly is an adjunct professor at Canisius College in Buffalo, New York.

29. Defendants purportedly maintain an offshore call center on the island of Jamaica. The unlawful debt collection calls that are described in this complaint originated from defendants' Jamaican call center.

30. A shareholder, owner, officer, member, manager, employee or agent of a corporate debt collector can be held liable for violating the FDCPA, without piercing the corporate veil, by being directly involved in the day-to-day operation of the company, including the training and managing of employees, reviewing or supervising the review of accounts, materially participating in the activities of the company, supervising collection activities, overseeing compliance with applicable collection laws, ratifying unlawful acts, and the like, for the reason that each such individual is himself a "debt collector" within the statutory definition, namely, each is a "person" in a business, "the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). *See Kistner v. Law Offices of Michael P. Margelefsky, LLC,* 518 F.3d 433, 435-438 (6th Cir. 2008); *Russell v. Goldman Roth Acquisitions, LLC,* 847 F.Supp.2d 994, 1004-06 (W.D.Mich. 2012).

**IV.    Facts**

31.    In 2012 and 2013, Mr. Crouch became financial strapped and resorted to

borrowing small amounts of money (typically $300.00 per transaction) in order to make ends

meet.  Mr. Crouch borrowed the money via the internet from various websites.  Mr. Crouch

entered into fewer than ten such transactions.  Mr. Crouch borrowed and used the money for

personal, family and household purposes.  Mr. Crouch borrowed the money in what is commonly

called a "payday loan," at an annual interest rate that exceeded 300 percent.

32.    On September 8, 2014, the Consumer Financial Protection Bureau ("CFPB") filed

a Complaint For Permanent Injunction And Other Relief against a group of internet payday

lenders (both individuals and companies), in the United States District Court for the Western

District of Missouri (Kansas City), Case No. 4:14-cv-00789-DW, alleging in part as follows:

> Defendants, operating through a maze of interrelated companies, use consumer
> information they purchase from third parties to originate payday loans with consumers'
> consent.  Defendants deposit the payday loans in consumers' bank accounts with
> consumers' consent.  Defendants deposit the payday loans in consumers' bank accounts
> without their authorization, and then use misrepresentations and other false documents to
> further convince these consumers that they agreed to these phony online payday loans.
> Defendants then use these purported loans as a basis to make repeated, unauthorized
> withdrawals from consumers' bank accounts.  In some cases, Defendants have bilked
> consumers out of thousands of dollars in "finance charges" for a $200 or $300 loan that
> the consumer never agreed to."

Four of the many named defendants in the CFPB lawsuit are related entities named Hydra

Financial Limited Fund I, Hydra Financial Limited Fund II, Hydra Financial Limited Fund III and

Hydra Financial Limited Fund IV (collectively, "Hydra").

33.    Mr. Crouch is a victim of the practices described in the CFPB lawsuit.

Specifically, Hydra without Mr. Crouch's consent originated in Mr. Crouch's name a "phony

payday loan" as the phrase is used in the CFPB lawsuit.  Hydra assigned the phony account an

Account Number of 244884920269

34.     Hydra sold the account to an entity named National Credit Adjusters, L.L.C. ("NCA").

35.     NCA placed the account for collection with entities named Secured Capital Management, Inc. and Hyperion Recovery LLC, and their principals named Robert Gregory McDonald, Joseph D. Francabandiero and Annette S. Sciandra.

36.     Beginning in February of 2015, SCM and its employees placed telephone calls to Mr. Crouch, Mr. Crouch's employer, and other third parties and attempted to collect money from Mr. Crouch through the use of deception, extortion and other unlawful means.

37.     Mr. Crouch hired an attorney to file a lawsuit against NCA, SCM, Hyperion, Mr. McDonald, Mr. Francabandiero and Ms. Sciandra for allegedly violating the FDCPA. In March of 2015, the dispute was resolved with no lawsuit being filed.

38.     Despite the foregoing, defendants NRA, BOC, UPG and Midwestern, stole Mr. Crouch's personal financial information, or somehow acquired Mr. Crouch's stolen personal financial information, and began efforts to collect money from Mr. Crouch that Mr. Crouch did not owe.

39.     On June 17, 2015 at approximately 7:19 p.m., defendants placed a call to a cellular telephone belonging to Mr. Crouch's wife and left the following message on Mr. Crouch's wife's voice mail: "This is a notification for Mark Crouch. My name is Michelle contacting you from the division of Pre-Trial Processing for the State of Michigan. I have received an order for four allegations to be filed against you immediately with your local county clerk's office. Unfortunately this department will be actively pursuing you at your place of

14

employment and your residence. You do have the legal right to resolve this case with the plaintiff outside of court. Please understand that once you are located you forfeit that right. You can contact the legal department at 844-238-7940. Please reference case number 1013134. That's 1013134. Mark Crouch, you have officially been notified." The call originated from telephone number 616-899-7634, which belongs to defendants.

40.    On June 17, 2015, defendants' employee and agent placed a call to Mr. Crouch's place of employment, spoke with Mr. Crouch's co-worker, stated that NRA was attempting to contact Mr. Crouch to collect a debt, left a message for Mr. Crouch to call NRA at 844-238-7940 regarding "Case Number 1013134," and warned that NRA would continue to call Mr. Crouch's place of employment until Mr. Crouch called NRA. Mr. Crouch's co-worker took the message and sent it to Mr. Crouch by text message. Defendants' unlawful communication with Mr. Crouch's place of employment has caused Mr. Crouch to suffer substantial damage by way of humiliation and harm at his place of employment.

41.    In subsequent telephone conversations, defendants' employees and agents used scripts, accusing Mr. Crouch of having committed bank fraud and other crimes.

42.    The above-described threats and representations made by defendants' employees and agents were false and part of a scripted and unlawful debt collection practice that is ongoing and is currently being perpetrated by defendants to coerce the payment of money from consumers across the country through the use of false threats, intimidation, and unlawful harassment of the consumers, their relatives and other third parties.

43.    Defendants and their employees and agents in the described communications failed to meaningfully identify themselves and their companies.

15

44.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Mr. Crouch and others that there were legal claims pending against Mr. Crouch.

45.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Mr. Crouch and others that criminal charges were pending against Mr. Crouch.

46.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Mr. Crouch and others that a lawsuit had been filed against Mr. Crouch to collect the alleged debt.

47.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Mr. Crouch and others that a lawsuit would be filed against Mr. Crouch to collect the alleged debt.

48.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Mr. Crouch and others that criminal charges would be filed against Mr. Crouch to collect the alleged debt.

49.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Mr. Crouch and others that Mr. Crouch had committed a crime.

50.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Mr. Crouch and others that Mr. Crouch was going to be arrested and prosecuted for having committed a crime.

51.     Defendants and their employees and agents in the described communications

16

falsely represented and falsely implied to Mr. Crouch and others that Mr. Crouch was going to be served with a summons and complaint.

52.     Defendants and their employees and agents in the described communications falsely represented to Mr. Crouch that he owed the alleged debt.

53.     Defendants and their employees and agents in the described communications falsely represented to Mr. Crouch that they owned the alleged debt.

54.     Defendants and their employees and agents in the described communications falsely represented to Mr. Crouch that they had the right to collect the alleged debt.

55.     Defendants did not intend to file a lawsuit against Mr. Crouch in any Michigan court in efforts to collect the alleged debt.  In fact, no defendant has ever filed any lawsuit in any Michigan court to collect any debt from any person.

56.     The FDCPA states that it is unlawful for a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any debt.  15 U.S.C. § 1692d.

57.     The FDCPA states that it is unlawful for a debt collector to use criminal means to harm the reputation of any person.  15 U.S.C. § 1692d(1).

58.     The FDCPA states that it is unlawful for a debt collector to place a telephone call without meaningful disclosure of the caller's identity.  15 U.S.C. § 1692d(6).

59.     The FDCPA states that it is unlawful for a debt collector to make any false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State.  15 U.S.C. § 1692e(1).

60.     The FDCPA states that it is unlawful for a debt collector to make any false

17

representation regarding the character, amount, or legal status of any debt.  15 U.S.C. § 1692e(2)(A).

61.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the compensation which may be lawfully received by any debt collector for the collection of any debt.  15 U.S.C. § 1692e(2)(B).

62.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that any individual is an attorney or that any communication is from any attorney.  15 U.S.C. § 1692e(3).

63.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.  15 U.S.C. § 1692e(4).

64.     The FDCPA states that it is unlawful for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken.  15 U.S.C. § 1692e(5).

65.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to lose any claim or defense to the payment of the debt.  15 U.S.C. § 1692e(6)(A).

66.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to become subject to any practice prohibited by the FDCPA.  15 U.S.C. § 1692e(6)(B).

67.     The FDCPA states that it is unlawful for a debt collector to falsely represent or

imply that the consumer committed a crime or other conduct in order to disgrace the consumer. 15 U.S.C. § 1692e(7).

68.     The FDCPA states that it is unlawful for a debt collector to communicate to any person credit information which is known or which should be known to be false. 15 U.S.C. § 1692e(8).

69.     The FDCPA states that it is unlawful for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt. 15 U.S.C. § 1692e(10).

70.     The FDCPA states that it is unlawful for a debt collector to communicate in a communication with a consumer to fail to disclose that the communication is from a debt collector. 15 U.S.C. § 1692e(11).

71.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that documents are legal process. 15 U.S.C. § 1692e(13).

72.     The FDCPA states that it is unlawful for a debt collector to use any business, company, or organization name other than the true name of the debt collector's business, company, or organization. 15 U.S.C. § 1692e(14).

73.     The FDCPA states that it is unlawful for a debt collector to use unfair or unconscionable means to collect or attempt to collect any debt. 15 U.S.C. § 1692f.

74.     The FDCPA states that it is unlawful for a debt collector to collect any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law. 15 U.S.C. § 1692f(1).

75.     Defendants and their employees and/or agents have violated the FDCPA, 15

19

U.S.C. §§ 1692d, 1692d(1) and (6), 1692e, 1692e(1), (2)(A), (2)(B), (3), (4), (5), (6)(A), (6)(B), (7), (8), (10), (11), (13) and (14), and 1692f and 169f(1).

76.     Defendants and their employees and/or agents falsely accused Mr. Crouch of committing a crime.  Mr. Crouch did not commit a crime under Michigan law because the Michigan Deferred Presentment Service Transactions Act, which regulates payday lending in Michigan, expressly states that the borrower in a payday loan transaction "is not subject to any criminal penalty in the event the drawer's check is dishonored."  M.C.L. § 487.2158(4).

77.     Morever, M.C.L. § 750.213 states in pertinent part:

Sec. 213.  MALICIOUS THREATS TO EXTORT MONEY – Any person who shall, either orally or by a written or printed communication, maliciously threaten to accuse another of any crime or offense . . .  with intent to extort money or any pecuniary advantage whatever . . . shall be guilty of a felony, punishable by imprisonment in the state prison not more than 20 years or by a fine of not more than 10,000 dollars.

Collection of a valid, enforceable debt does not permit malicious threats of injury if payment is not made.  *People v. Maranian*, 359 Mich. 361 (1960).

78.     Defendants and their employees and agents attempted to criminally extort money from Mr. Crouch and violated M.C.L. § 750.213.

79.     The FDCPA requires that, within five days of the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the required information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing the information mandated by 15 U.S.C. § 1692g(a).

80.     Defendants failed to provide Mr. Crouch with the information it was required

to provide by the FDCPA, 15 U.S.C. § 1692g(a) and thereby violated the FDCPA.

81. Defendants and their employees, managers, owners, agents, attorneys, affiliates and co-conspirators, yet to be identified in discovery, are engaged in a criminal organization and scheme, through which they directly and indirectly conspire to purchase and collect delinquent payday loans, as well as to collect money in connection with accounts they do not own or on which no money is owed, by using the above-described debt collection practices, in violation of the FDCPA (and various state laws, including Michigan law), and that include the use of scripted threats of faked litigation and criminal extortion, and that include demands for payments in amounts that exceeded the amount expressly authorized by the agreement creating the debt or permitted by law.   Defendants and their employees, managers, owners, agents, attorneys, affiliates and co-conspirators, have used the same script and same unlawful, criminal tactics, to collect or attempt to collect money from more than one thousand persons.  The criminal enterprise remains active and ongoing.

82. Each defendant and each defendant's employees, managers, owners, agents, attorneys, affiliates and co-conspirators had knowledge of, approved of, and ratified the use of the unlawful debt collection practices that are described in this complaint.

83. Defendants and their employees, managers, owners, agents, attorneys, affiliates and co-conspirators each have intentionally and wilfully violated the FDCPA, MRCPA and MOC.

84. The FDCPA states in part, "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged."  15

21

U.S.C. § 1692(e).

85.     Defendants and their employees, managers, owners, agents, attorneys, affiliates and co-conspirators, to increase their business and profits, have knowingly chosen to use debt collection practices that violate the FDCPA and Michigan law, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

86.     As an actual and proximate result of the acts and omissions of defendants and their employees, managers, owners, agents, attorneys, affiliates and co-conspirators, plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, anxiety, loss of sleep, and suffering, for which he should be compensated in an amount to be established by jury and at trial.

**V.      Claims for Relief**

**Count 1 – Fair Debt Collection Practices Act**

87.     Plaintiff incorporates the foregoing paragraphs by reference.

88.     Each defendant has violated the FDCPA.  Each defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

a)      Defendants violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

b)      Defendants violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt;

c)      Defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff; and

d)      Defendants violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)      Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)      Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)      Such further relief as the court deems just and proper.

### Count 2– Michigan Regulation of Collection Practices Act

89.     Plaintiff incorporates the foregoing paragraphs by reference.

90.     Each defendant has violated the MRCPA.  Each defendant's violations of the MRCPA include, but are not necessarily limited to, the following:

a)      Defendants violated M.C.L. § 445.252(a) by communicating with a debtor in a misleading or deceptive matter, including simulated judicial process;

b)      Defendants violated M.C.L. § 445.252(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

c)      Defendants violated M.C.L. § 445.252(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

d)      Defendants violated M.C.L. § 445.252(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened, (ii) the legal rights of a creditor or debtor, and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the

23

seizure, garnishment, or sale of the debtor's property;

e)      Defendants violated M.C.L. § 445.252(g) by communicating with a debtor

without accurately disclosing the caller's identity;

f)      Defendants violated M.C.L. § 445.252(n) by using a harassing, oppressive, or

abusive method to collect a debt; and

g)      Defendants violated M.C.L. § 445.252(q) by failing to implement a procedure

designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages pursuant to M.C.L. § 445.257(2);

b)      Treble the actual damages pursuant to M.C.L. § 445.257(2);

c)      Statutory damages pursuant to M.C.L. § 445.257(2);

d)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 445.257(2); and

e)      Equitable relief pursuant to M.C.L. § 445.257(1).

### Count 3 – Michigan Occupational Code

91.      Plaintiff incorporates the foregoing paragraphs by reference.

92.      Each defendant has violated the MOC. Each defendant's violations of the MOC
include, but are not necessarily limited to, the following:

a)      Defendants violated M.C.L. § 339.915(a) by communicating with a debtor in a

misleading or deceptive matter, including simulated judicial process;

b)      Defendants violated M.C.L. § 339.915(e) by making an inaccurate, misleading,

untrue, or deceptive statement or claim in a communication to collect a debt;

c)      Defendants violated M.C.L. § 339.915(e) by concealing or not revealing the

24

purpose of a communication when it is made in connection with collecting a debt;

d)      Defendants violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened; (ii) the legal rights of a creditor or debtor; and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, attachment or sale of the debtor's property;

e)      Defendants violated M.C.L. § 339.915(g) by communicating with a debtor without accurately disclosing the caller's identity;

f)      Defendants violated M.C.L. § 339.915(n) by using a harassing, oppressive, or abusive method to collect a debt;

g)      Defendants violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee; and

h)      Defendants violated M.C.L. § 339.918.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages pursuant to M.C.L. § 339.916;

b)      Treble the actual damages pursuant to M.C.L. § 339.916;

c)      Statutory damages pursuant to M.C.L. § 339.916;

d)      Equitable relief pursuant to M.C.L. § 339.916; and

e)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

**Demand for Trial by Jury**

Plaintiff demands trial by jury.

Dated: September 9, 2015

/s/ Phillip C. Rogers
Phillip C. Rogers (P34356)
Attorney for Plaintiff
40 Pearl Street, N.W., Suite 336
Grand Rapids, Michigan 49503-3026
(616) 776-1176
ConsumerLawyer@aol.com